JUAN GARCÍA ROCA ET AL., Plaintiffs and Appellants, *v.*
CENTRAL ALIANZA, INC., Defendant and Appellee.

No. 9704.   Argued December 1, 1948.—Decided April 22, 1949.

*R. B. Pérez Mercado* for appellants. *E. Pérez Casalduc* for appellee.

MR. CHIEF JUSTICE DE JESÚS delivered the opinion of the Court.

The marriage between Juan García Siberio and Juana Roca Díaz was dissolved by the death of the latter on September 2, 1910. The conjugal partnership acquired two properties of 47 and 41.32 *cuerdas* (acres) in the ward Los Cocos of Quebradillas and the wife acquired by inheritance a one-third interest in another property of 245½ acres situated in the ward San Antonio within the same municipality. The surviving spouse, García Siberio, by deed of December 8, 1913 purchased from his brothers-in-law the two shares of one-third which each possessed in the same property in San Antonio. It was stated in the deed of sale that the vendors had sold to García Siberio "some time ago" and confessed having received the purchase price prior to the execution of the deed, but the date of the sale or of the receipt of the money did not appear. Under these circumstances, the two-third interest was recorded in favor of García Siberio as his separate property.[1] Hence, the capital of García Siberio after the death of his wife consisted of one-half of the conjugal property in both estates in ward Los Cocos and a two-third interest in the property in the ward San Antonio.

Those were his assets. Now we shall examine his liabilities. On October 13, 1910, García Siberio, for himself, and as father with *patria potestas* over all his children, constituted a mortgage, with judicial authorization, on the two properties in ward Los Cocos in favor of Plazuela Sugar Co. to secure a loan for $5,000. When it became due, the

---

[1] There is a conflict in the evidence as to this point, for although the deed was executed on the day stated in the opinion, the plaintiffs tried to prove with the testimony of García Siberio that he had purchased the two shares while his wife was still living in 1909. The lower court did not believe the testimony of García Siberio, but in view of the conclusion we have reached in this opinion, it is immaterial whether the shares belong to the conjugal partnership or separately to the father.

creditor instituted foreclosure proceedings but when the call for bids had already been advertised it assigned its mortgage credit to Central Alianza for $5,489.30, which amount included $5,189.30 of capital and accrued interest plus $300 of attorney's fees which the assignee paid. This marked the beginning of the business relations between García Siberio and the defendant herein. He received loans for agricultural advances for his property, thus increasing his debt considerably. He also constituted a partnership with his brother José García Siberio in order to engage in the planting and cultivation of sugar cane in the two estates in the ward Los Cocos for which the defendant furnished the necessary agricultural advances. But this partnership ended in an economic disaster. After some time they were forced to dissolve it and Juan García Siberio assumed the larger portion of the debts which the partnership had contracted with the defendant. Besides, he owed $6,755 to Gandía & Stubbe for fertilizer according to a deed of acknowledgment of debt executed in 1912, although we have been unable to find in the record the date when this account began. This firm sued García Siberio and his children to recover a credit which was paid by Central Alianza on their account. García Siberio had also mortgaged his two-third interest in the property of ward San Antonio in favor of Luis Abrams to secure a loan for the amount of $6,720 at one per cent monthly interest. In 1926 the mortgage creditor instituted a mortgage foreclosure proceeding which, with accrued interest, amounted to $9,280. He also contracted a debt with Sobrinos de Esquiaga, although there is no showing as to the amount or date of payment. In view of the difficult economic situation which exposed him to lose all his capital, including the shares of his children in the property Los Cocos, he went to Andrés Oliver, President of Central Alianza, Inc., who, as the record shows, had always protected him. Oliver promised him that Central Alianza would help him save his property and offered him a plan. It consisted in

raising funds by mortgaging the properties to the Federal Land Bank of Baltimore and with the proceeds thereof pay all his debts, including those to Central Alianza, as far as the money would reach. To accomplish this it was necessary to reach an agreement with Luis Abrams so that he should proceed with the foreclosure proceeding of the shares of the property in the ward San Antonio, in order that a person trusted by Oliver should purchase them at the public auction. This person was Miguel A. Balseiro to whom the Central furnished the money to purchase the property interest sold at the public auction. After Balseiro acquired that part of the property in the public sale, then García Siberio as well as his children, all of legal age, with the exception of Carmen Virginia, would convey to him all their interest in the aforesaid properties. Then Balseiro would divide the property of San Antonio into two parcels and consolidate the two farms in Los Cocos, thereby forming three different farms. One of the parcels in San Antonio would be conveyed by Balseiro to Felipe García and the other to Manuel Oliver Aresti, both persons trustworthy, while Balseiro would keep the consolidated properties in the ward Los Cocos. These transactions were necessary because the Bank would not lend more than $10,000 to one person, no matter the security offered. Having carried out this plan, García Siberio and his children, of legal age, conveyed to Balseiro all their interest in the aforesaid property. However, they met with the difficulty that the minor Carmen Virginia had not sold her interest, and consequently, the property was owned in common by Balseiro and her. The Bank would not make loans on portions of property so in order to facilitate the transaction with the Bank the two owners in common divided it by deed of December 31, 1926, at which Carmen Virginia appeared with her husband and García Siberio to complete her capacity, after having obtained judicial authorization. By virtue of the partition of the property owned in common, Carmen Virginia received two parcels of land of 14.20 and 7.49 acres,

respectively, which were segregated from the property in Los Cocos. The tenancy in common being thus divided Balseiro segregated and conveyed to Felipe García a parcel of the property in San Antonio of an area of more than 100 acres and conveyed the remainder of said property to Manuel Oliver Aresti. Then the apparent owners of the three properties, Felipe García, Oliver Aresti and Balseiro applied for several loans from the Bank which were secured by their property in their respective names, obtaining a total amount of $21,100, one of the loans being executed by deed of May 18, 1927 and the other two by deeds of May 19, and 21. With the money, Central Alianza paid all the debts of García Siberio but the latter still owed a considerable amount to the Central for the latter had not only furnished advances for agriculture but also paid the taxes. After having paid all the debts of García Siberio and his children, Manuel Oliver Aresti by deed of August 23, 1947 resold to Juan García Siberio the parcel which appeared in his name; and three days later Felipe García and Miguel Balseiro also reconveyed their respective properties to him.[2] Being owner of the three farms and owing to the Central Alianza at that time the amount of $15,000, García Siberio, on that same day August 26, 1927 true to the plan agreed, mortgaged the two properties, that is, the two consolidated parcels in the ward Los Cocos and the one in San Antonio, to Central Alianza to secure his debt with interest at the legal rate of six per cent. The children of García Siberio learned of the reconveyance made by Balseiro, Oliver Aresti and Felipe García to his father in August, 1927 and although they testified that they

---

[2] There is a controversy between the parties as to whether it was agreed that after having obtained the loan from the bank and paid the debts, the property should be reconvoyed to the father and to the children in proportion to their respective interest. But the court did not believe plaintiffs' evidence as to this particular. Indeed, upon examining the testimony of García Siberio it will be seen that it merits no credit, for although it was not contradicted by Oliver because he died prior to the trial, his manner of testifying pretending to ignore things which he later admitted, made his credibility doubtful.

were annoyed because their father accepted the properties in his name instead of distributing them among all in proportion to their respective shares, they took no steps to annul the sale or to demand the conveyance of their respective shares. On the contrary, the father continued administering all the properties and receiving money from the Central for advances and other purposes until August 29, 1929 when he realized he could make no progress; that the Central had already paid to the Bank the first three instalments of the mortgage and that the debt to the latter together with that to the Central amounted to $41,000; that the latter requested García Siberio to adjudicate the property in payment of the debt. The Central in turn, returned to him about $5,000, according to its evidence, but $3,000 according to García Siberio. He was also given an employment in the Central of $20 weekly, but he ceased shortly thereafter. The deed of adjudication was executed in favor of the Central on August 29, 1929. On that same day, Carmen Virginia, already of legal age, sold her two parcels of land to Miguel A. Balseiro by deed executed before Notary Miguel Santoni Ledesma, for the amount of $2,500, having received a check for $500 and a note for $2,000, which documents were endorsed by her, and according to her testimony, delivered to her father who disposed of the money. Subsequently, Balseiro conveyed to the Central in payment of a debt, the two parcels of land which he had purchased from Carmen Virginia. Thus the two parcels of land passed to the defendant.

By 1929 all his children, including Carmen Virginia, had become of legal age. None of them raised any objection to the conveyance of the lands to the Central. It was not until March 28, 1944 that they filed the complaint in the present case seeking the revendication of their shares.

The lower court dismissed the complaint and in this appeal plaintiffs pray for the reversal of the judgment relying virtually on the fact that there was no consideration in the conveyances made by the children of Juan García Siberio

to Balseiro and consequently that the transaction was void; that the partition of the property in common carried out between Carmen Virginia and Balseiro was void and lastly that there was manifest error in the weighing of the evidence.

In our opinion, the evidence was correctly weighed. The court analyzed all the details and we agree with its findings. We shall now consider the questions of law.

██ It is unquestionable that no consideration existed in the conveyances of the shares made by Juan García Siberio and his children, of legal age, to Balseiro but we should bear in mind that Balseiro acted as an agent of Central Alianza; that García Siberio as well as his children were in debt with Central Alianza because the latter had acquired the mortgage constituted by them, with judicial authorization, in favor of Central Plazuela; because the Central had also paid the mortgage executed by García Siberio in favor of Luis Abrams and lastly because it owed the Central a considerable amount of money for agricultural advances, taxes, etc., and the conveyances made not only intended to benefit García Siberio but also his children, because if Central Alianza had foreclosed the mortgage made in favor of Plazuela Sugar Co., if the Central had sued for the recovery of its debts which were not secured by any mortgage and if it had permitted the foreclosure of the mortgage of Luis Abrams and a stranger to acquire the two-third interest in the property in San Antonio, undoubtedly the capital of all the children would have diminished, at least, to a one-third of the property in the ward San Antonio. These considerations must have weighed on the mind of García Siberio and his children and consequently they constituted sufficient consideration of contract. Manresa, Comentarios al Código Civil Español, Vol. 8 (2d ed. 1907) page 679. For this reason we agree with the lower court that there was a consideration in the conveyance to Balseiro, for even though

the true consideration was not expressed in the deed, the result is the same, inasmuch as pursuant to § 1228 of the Civil Code, if it is proven that there was a real and licit consideration, such as the redemption of the property by means of the plan agreed, the statement of a false consideration in the deed of sale to Balseiro, that is, the confession of the price received did not render the contract void. It appeared from the evidence that the children of García Siberio had lived on the proceeds of the property until they reached their majority and as to Carmen Virginia until she contracted marriage. So that when they all consented to their father continuing the transactions with the Central and receiving money from the latter for agricultural advances, taxes, etc., they ventured in an enterprise which unfortunately failed but which could have saved the capital of the whole family if luck had been on their side.

■ The conveyance of the property of García Siberio to Central Alianza did not lack consideration either. He made every possible effort, but when he was convinced that he could not make good because his debts, as we have seen, amounted to $41,000 he delivered the property in payment thereof. There is no showing that this transaction was made without the consent of the children. On the contrary the lapse of four years without objection on their part tends to indicate that they acquiesced. It is not alleged that the adjudication was a fraud against the children but supposing that it was, the fifteen years that elapsed from the adjudication in 1929, while they were all of legal age, until the filing of the complaint in 1944 would estop them from bringing the action for nullity.

■ Insofar as Carmen Virginia is concerned, supposing that the partition of the property in common was void, the transaction was ratified by her when, already of legal age, she sold to Balseiro her parcels of land for $2,500. *Campos v. Central Cambalache*, 64 P.R.R. 294, affirmed in 157 F. 2d 43 (C.C.A. 1, 1946), certiorari denied in 330 U. S. 842.

For the reasons stated we are of the opinion that the lower court did not err in dismissing the complaint of revendication.

Judgment will be affirmed.